**DEALE SERVICES, LLC**
**Jerry A. Miles, Esq.**
T 240 403 2652
E jmiles@dealeservices.com

July 8, 2014

Clerk of the Court
United States District Court, District of Maryland
Greenbelt (Southern) Division
6500 Cherrywood Lane
Greenbelt, MD 20770

   **RE:   New Filing.**

To Clerk of the Court:

   Please accept for filing Plaintiff Science Systems and Applications, Inc.'s Complaint and

Associated Motions.  We have enclosed for filing the following:

   (1) Plaintiff's Civil Cover Sheet;

   (2) Plaintiff's Complaint and Motion for Injunctive Relief, with Exhibits A, B and C;

   (3) Plaintiff's Motion for Protective Order;

   (4) Proposed Protective Order

   (5) Plaintiff's Corporate Disclosure Statement.

   (6) Filing fee of $400, payable to Clerk of the Court.

Thank you for your assistance in this matter.

                              Sincerely,

                              Jerry A. Miles, Esq.
                              **DEALE SERVICES, LLC**
                              One Research Court, Suite 450
                              Rockville, Maryland, 20850
                              O| 240 403 2652 M| 240 328 0514
                              A| 240 342 3212  F| 301 519 8001
                              E| jmiles@dealeservices.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

|  |  |  |
|---|---|---|
| SCIENCE SYSTEMS AND APPLICATIONS, INC. | ) | |
| 10210 Greenbelt Road, Suite 600 | ) | |
| Lanham, Prince George's County, Maryland 20706 | ) | |
| | ) | |
|      Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| NATIONAL OCEANIC AND ATMOSPHERIC | ) | |
|      ADMINISTRATION | ) | |
| | ) | |
| **Serve:** | ) | |
| United States Attorney's Office | ) | |
| District of Maryland, Southern Division | ) | |
| 6406 Ivy Lane, Suite 800 | ) | |
| Greenbelt, MD 20770 | ) | |
| | ) | |
| And | ) | |
| | ) | |
| 2020 COMPANY, LLC | ) | |
| 208 South LaSalle Street | ) | |
| Chicago, IL 60604 | ) | |
| | ) | |
| **Serve:** | ) | |
| State Dept. of Assessments and Taxation | ) | |
| 301 W Preston St., Room 801 | ) | |
| Baltimore, MD 21202 | ) | |
| | ) | |
|      Defendants. | ) | |

## COMPLAINT AND MOTION FOR EMERGENCY INJUNCTIVE RELIEF

Plaintiff Science Systems and Applications, Inc. ("SSAI"), through undersigned counsel, in accordance with the Federal Rules of Civil Procedure, Rules 3 and 65, files its complaint for injunctive relief and alleges the following:

## PRELIMINARY STATEMENT

1.      This matter involves a negligent failure of the United States government to protect the confidential information of the Plaintiff ("Plaintiff's Property"), which was provided to the government in the course of Plaintiff's performance of a contract with the National Oceanic and Atmospheric Administration ("NOAA" or the "Agency").

2.      NOAA failed to protect the Plaintiff's data in violation of the information security requirements provided in the Procurement Integrity Act (41 U.S.C. § 423, as implemented by 48 C.F.R. § 3.104-3), and the Federal Information Security Management Act (44 U.S.C. §§ 3541-3549) ("FISMA").

3.      The Plaintiff's Property was highly sensitive Source Selection Information and bid documents related to Plaintiff's NOAA contract, containing labor, overhead and G&A rates.  Such information would, and potentially did, provide a direct competitive advantage to Plaintiff's competitors.

4.      NOAA negligently stored Plaintiff's Property in a non-secure, public server that was accessible by Plaintiff's direct competitors.

5.      Time is of the essence because Plaintiff's current (ESPDS) Contract with NOAA is set to demobilize by July 27, 2014, and a new (SMOMS) Contract will begin transitioning in its place. Plaintiff seeks equitable injunctive relief and requests that the award of the SMOMS Contract (defined below) be stayed, and the demobilization of its (ESPDS) Contract (defined below) also be stayed, until

the Office of Inspector General (OIG) can complete its investigation into the breach of security and determine whether Plaintiff's proprietary data was accessed, and if so how has its proprietary data been used.

6.　　Plaintiff seeks an equitable injunction because it has no other remedy at law; all legal remedies available to it will be untimely.

## PARTIES

7.　　Plaintiff SSAI is a Maryland corporation with its principal office located at 10210 Greenbelt Road, Suite 600, Lanham, Prince George's County, Maryland 20706.

8.　　Defendant National Oceanic and Atmospheric Administration ("Defendant" "NOAA" or "Agency"), is an agency of the United States within the Department of Commerce.

9.　　2020 Company, LLC ("2020 Company"), is an Illinois limited liability company, and is registered to do business in the state of Maryland.  2020 Company is joined as a party pursuant to Federal Rule of Civil Procedure, Rule 19, because 2020 Company has an interest in the outcome of the relief sought, as it was awarded the Contract that Plaintiff seeks to enjoin.

## JURISDICTION AND VENUE

10.　　This Court has subject matter jurisdiction pursuant to 28 US.C. § 1331, as this cause of action arises under the Federal Tort Claims Act and violations of the Procurement Integrity Act and FISMA.

11.　　This Court has jurisdiction over the United States as Defendant pursuant to 28 U.S.C. § 1346.

12.　　This judicial district is the proper venue pursuant to 28 U.S.C. § 1391(e), because Defendant is an agency of the United States and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

3

## SUMMARY OF RELEVANT FACTS

13.     SSAI was the Prime Contractor on the Environmental Satellite Processing Division Support (ESPDS) - Order no. GST0110BK0017, Contract no. CM130105CT0047 ("ESPDS Contract"), issued by the National Oceanic and Atmospheric Administration (NOAA), National Environmental Satellite, Data and Information Service.

14.     SSAI submitted sensitive information to NOAA as part of its proposal in its response to Contracting Officer's request to exercise ESPDS Option Year Two.

15.     NOAA later issued a new Solicitation for Satellite Mission Operations and Maintenance Support, solicitation no. ST-133E-13-RP-0196 ("SMOMS Solicitation"). The SMOMS Contract was awarded to 2020 Company, LLC.

16.     SSAI could not directly compete for the SMOMS Contract, but was a subcontractor to Systems Integrated Development, Inc. ("SID") which submitted a proposal and was a direct competitor for the SMOMS Solicitation.

17.     SSAI recently learned that Source Selection Information related to both the ESPDS Contract and the SMOMS Solicitation may have been inappropriately disclosed to individuals or entities that are or were unauthorized to access or view these data, and that SSAI proprietary information regarding the current ESPDS contract may have been compromised.

18.     On May 7, 2014, the Program Manager for the ESPDS contract was searching for the most recent version of a contract related document, in preparation for a meeting, on a shared OSPO hard drive.  The drive was titled G:\OSPO\MOD\ESPDS so he assumed that this location is where he would find the document he needed.  When he accessed this folder however, he discovered that there were dozens of files posted here related to the SMOMS acquisition, evaluation, and award.  Although he did

4

not open the files, based on their titles they appear to include information such as acquisition strategies, government cost estimates, and proposal price evaluations.  A screenshot of the drive is attached as Exhibit A.

19.     Additionally, the ESPDS Program Manager saw document titles that he recognized as previous bid documents that SSAI had submitted for ESPDS Option Year Two. Knowing that these documents contained highly sensitive data such as labor, overhead, and G&A rates, he became very concerned and opened the SSAI-specific documents. These documents were password protected when submitted to the Government, but SSAI found that these documents had been altered and the password protection removed. It is not possible to ascertain who else may have had access to this information without further investigation, but it appears that the folder is at least accessible to potentially a large number of people within the Mission Operations Division, including personnel from SSAI's competitors.

20.     These documents along with many of the others contained in this folder may contain information that provides a direct competitive advantage to SSAI's competitors for SMOMS and many future business opportunities. The release or failure to protect source selection data and sensitive SSAI information may have already caused significant harm to SSAI. Unfortunately, this is not the first time that SSAI has encountered and reported improper handling of SSAI proprietary information by NOAA personnel on the ESPDS contract.

21.     SSAI's current ESPDS contract with NOAA is nearing its August 15, 2014 completion date.  SSAI is scheduled to be demobilized starting in July, and the new contractor will begin phasing in the SMOMS Contract on July 14, 2014.

## VIOLATIONS

### The Agency Violated the Procurement Integrity Act

22.     The Procurement Integrity Act prohibits wrongfully disclosing and obtaining procurement information.  Specifically, the Act provides that a Government official or employee "shall not knowingly disclose contractor bid or proposal information or source selection information before the award of a Federal agency procurement contract to which the information relates." 41 U.S.C. § 2102 (a)(1).  And that, "a person shall not knowingly obtain contractor bid or proposal information or source selection information before the award of a Federal agency procurement contract to which the information relates."  41 U.S.C. § 2102 (b).

23.     The Agency disclosed SSAI's Proposal and Source Selection Information in violation of the Procurement Integrity Act by removing password protections and storing Plaintiff's data in a publicly accessible, unsecure location.

### The Agency Violated the Federal Information Security Management Act

24.     The FISMA was enacted, in relevant part, to: (1) provide a comprehensive framework for ensuring the effectiveness of information security controls over information resources that support Federal operations and assets; (2) recognize the highly networked nature of the current Federal computing environment and provide effective government-wide management and oversight of the related information security risks, including coordination of information security efforts throughout the civilian, national security, and law enforcement communities; (3) provide for development and maintenance of minimum controls required to protect Federal information and information systems; and (4) provide a mechanism for improved oversight of Federal agency information security programs. 44 U.S.C.A. § 3541 (1)-(4).

6

25.     FISMA mandates that Federal Agencies provide "information security protections commensurate with the risk and magnitude of the harm resulting from unauthorized access, use, disclosure, disruption, modification, or destruction of--(i) information collected or maintained by or on behalf of the agency; and (ii) information systems used or operated by an agency or by a contractor of an agency or other organization on behalf of an agency.  44 U.S.C.A. § 3544.

26.     The Agency failed to prevent the disclosure of SSAI's Proposal and Source Selection Information in violation of the FISMA.

### Federal Tort Claims Act

27.     Through the Federal Tort Claims Act (FTCA), Congress has provided that the Federal Government may be sued in federal district courts for injury or loss of property ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. [1]

28.     NOAA's actions would be actionable as a negligence action under Maryland state law[2] because the Agency owed a duty to protect its contractors' and offerors' data, it failed to protect its data

---

[1] *Florida Auto Auction of Orlando, Inc. v. United States*, 74 F.3d 498, 501-02 (4th Cir. 1996) (citing 28 U.S.C. § 1346(b) (1988)).

[2] In Maryland, one who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking. *In re Sabin Oral Polio Vaccine Products Liab. Litig.*, 774 F. Supp. 952, 954 (D. Md. 1991) aff'd, 984 F.2d 124 (4th Cir. 1993).

In Maryland, violation of a statute or regulation is evidence of negligence claim where three requirements are met. First, the plaintiff must be a member of the class of persons the statute was

in accordance with the requirements of the Procurement Integrity Act and FISMA, and this failure may have already lead to actual damage to SSAI's business.

## EXHAUSTION OF REMEDIES

29.    Upon learning of the security failure, SSAI promptly provided notice, through counsel, to Mr. Mitchell Ross, Director of NOAA's Acquisition and Grants Office, informing him of the security breach and wrongful disclosure of Source Selection Information, and requested his office investigate the cause of the security breach and the scope of information that was improperly accessed. The May 16, 2014, letter to Mr. Ross is attached as Exhibit B. The May 16, 2014, letter was also copied to Mr. Anthony Pellegrino, Contracting Officer of General Services Administration, and to the United States Department of Commerce Office of Inspector General. *See* Ex. B. Mr. Jeff Murse (202-482-6068) from the United States Department of Commerce Office of Inspector General is overseeing the investigation.

30.    SID, an unsuccessful offeror on the SMOMS Solicitation, for which Plaintiff was going to be a subcontractor on the SMOMS Contract, filed a post-award bid protest with the Government Accountability Office (GAO) on May 22, 2014, in part on the basis that source selection information of its proposed subcontractor SSAI was wrongfully disclosed and unprotected, and in failing to maintain source selection information confidential, NOAA violated the RFP and Procurement Integrity Act, and the award was thereby tainted.

31.    Unfortunately, SID's GAO Protest was dismissed due to a technical filing error, and SID can no longer pursue its protest at GAO. SID still has the option of protesting the SMOMS contract award at the Court of Federal Claims. As of the date of this filing, SID has not filed any such protest. If

---

designed to protect. Second, the injury suffered must be of the type the statute was designed to prevent. Third, the plaintiff must present legally sufficient evidence to demonstrate that the statutory violation was the proximate cause of the injury sustained. *Pahanish v. W. Trails, Inc.*, 517 A.2d 1122, 1132 (Md. App. 1986).

SID pursues its option to Protest the Contract award at the Court of Federal Claims, it may request injunctive relief to suspend the performance of the Contract.

32.     Plaintiff was not a direct bidder on the SMOMS Solicitation, and thus has no standing to file a protest of the Solicitation award with the GAO or Court of Federal Claims.

## BASES FOR INJUNCTIVE RELIEF

33.     Injunctive relief is authorized by general principles of equity, federal statutes or state law.[3]

34.     A hardship balancing test applies to determine the granting or denial of a preliminary injunction in this Circuit, which requires consideration of the following four factors:  (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied, (2) the likelihood of harm to the defendant if the requested relief is granted, (3) the likelihood that the plaintiff will succeed on the merits, and (4) the public interest. [4] The irreparable harm to the plaintiff and the harm to the defendant are the two most important factors. [5]

35.     Plaintiff will suffer irreparable, actual and imminent harm without injunctive relief.

36.     Without injunctive relief, Plaintiff's Contract will be completely demobilized by July 27, 2014, and it will not have the opportunity to investigate the security breach and the extent to which SSAI's proprietary information was provided to its competitors.

---

[3] *See eBay Inc. v. Merc-Exchange, L.L.C.*, 547 U.S. 388, 391 (2006) (injunctive relief is based on well-established principles of equity).

[4] *Direx Israel, Ltd. v. Breakthrough Medical Corp.*, 952 F.2d 802, 812 (4th Cir. 1991) (citing *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F2d 189 (4th Cir. 1977).

[5] *Direx Israel, Ltd.*, 952 F.2d at 812.

37.     Without a clear understanding of the extent of the data breach, Plaintiff will be at a competitive disadvantage for all contract proposals it submits in the future, and thus its business could be greatly harmed.

38.     The OIG investigation may reveal evidence of information security breaches relating to SSAI's Source Selection Information that would taint the SMOMS contract award.

39.     If the SMOMS contract was awarded in error and in violation of the Federal Acquisition Regulations, the Contract performance should be suspended and the contract re-solicited.

40.     A short delay of the SMOMS Contract Start Work Order will potentially prevent a very costly demobilization if the OIG investigation shows that the SMOMS contract was improperly awarded.

41.     Any harm to the agency in delaying the SMOMS contract performance will be minimal because the existing ESPDS Contract can continue until the SMOMS contract is fully mobilized. Further, if the OIG concludes that the Plaintiff's information was improperly disclosed and that the SMOMS Contract was awarded in error, then it would be far more costly to demobilize the SMOMS Contract after Plaintiff has demobilized its contract, because there would be no alternative means of performing the contract work.

42.     Plaintiff will likely succeed on the merits because it can show that the information was improperly maintained by the Agency amounting to negligence and supporting a claim under the Federal Tort Claims Act.

43.     The public interest is best served by permitting the OIG to conduct it investigation to prevent future data breaches. As FISMA language makes clear, information security is a high priority for the government, and such a failure to secure a contractor's data affects both public confidence in the

government's data security, but also in the procurement community's confidence that its proprietary and other information will not be wrongfully disclosed.

44.     Injunctive relief is necessary to preserve the status quo (i.e., do not demobilize the current contract) until the OIG and Contracting Officer can conclude their investigations.

45.     Plaintiff is willing to post a bond. However, SSAI requests that this Court demand a nominal bond. A large bond request would essentially foreclose any remaining remedy to SSAI because it would preclude appeal by small businesses that cannot afford a large bond despite having good cause.

46.     Without injunctive relief, none of the other potential remedies available to Plaintiff will take their course prior to the demobilization of their current Contract. Plaintiff seeks the equitable remedy of injunctive relief because it has no adequate remedy at law. Any remedies provided by statute would not be available until well beyond the current contract is demobilized, at which point any violations in the procurement process will be incurable.

47.     Plaintiff has no other available remedy because: (a) Plaintiff was not a direct offeror on the SMOMS Procurement and cannot directly protest that procurement for violation of the Procurement Integrity Act;[6] (b) Plaintiff could submit a claim for violation of the Procurement Integrity Act relating to its ESPDS Contract, but such a claim will not be resolved until well after the contract is complete and Plaintiff is demobilized; (c) The Federal Tort Claims Act requires that prior to submitting an action against the United States for, the Plaintiff shall have first presented the claim to the agency and, within 6 months that claim will be denied. 28 U.S.C. § 2675. This claim would thus not be resolved until well after the contract is compete and Plaintiff is demobilized.

---

[6] To qualify as an "interested party" within the meaning of the Tucker Act, conferring jurisdiction in a bid protest action against the United States, the protestor must establish that: (1) it was an actual or prospective bidder or offeror, and (2) it had a direct economic interest in the procurement or proposed procurement of the government contract. 28 U.S.C. § 1491(b)(1).

11

**WHEREFORE**, Plaintiff Science Systems & Applications, Inc. respectfully request that this Honorable Court enter an ORDER:

A. Granting Plaintiff's Request for Preliminary Injunction; and

B. ORDER that the ESPDS Contract de-mobilization is suspended pending the completion of the OIG investigation;

C. ORDER that the SMOMS Contract mobilization is suspended pending the completion of the OIG investigation; and

D. Granting any other such relief as this Court deems just and proper including permanently injoining the mobilization and award pending the outcome of the OIG investigation.

Respectfully submitted,

Dated: July 9, 2014

Jerry A. Miles, Esq.
**DEALE SERVICES, LLC**
One Research Court, Suite 450
Rockville, Maryland, 20850
O| 240 403 2652 M| 240 328 0514
A| 240 342 3212  F| 301 519 8001
jmiles@dealeservices.com
*Counsel for Plaintiff*

12