**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| | * | |
| SCIENCE SYSTEMS AND APPLICATIONS, INC., | * | |
| **Plaintiff,** | * | |
| v. | * | Case No.: PWG-14-2212 |
| UNITED STATES OF AMERICA, *et al.* | * | |
| **Defendants.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff, a government contractor, has brought this action alleging that certain confidential information provided to the United States as part of the bidding process was improperly published to Plaintiff's competitors.   To remedy the breach, Plaintiff seeks a temporary restraining order requiring the United States to take down the confidential information and also preventing the mobilization and demobilization of contracts in which Plaintiff was involved.   Because Plaintiff has not attempted to provide notice to Defendants or shown why notice should not be required in accordance with Fed. R. Civ. P. 65(b)(1)(B), I must deny the TRO.   In addition, because this Court lacks jurisdiction over certain of Plaintiff's claims, I find that I cannot issue an injunction with respect to the mobilization or demobilization of contracts in any event, and dismiss certain of Plaintiff's claims for lack of subject matter jurisdiction.

## I.       BACKGROUND

Plaintiff Science Systems and Applications, Inc. ("SSAI"), describes itself as "a leading provider of scientific, engineering, and IT support for customers who seek new frontiers in

science and technology," Sci. Sys. and Applications, Inc. (SSAI), https://www.ssaihq.com/ (last visited July 21, 2014), and is incorporated and headquartered in Maryland, Am. Compl. ¶ 7, ECF No. 15.[1]  SSAI is the prime contractor on the Environmental Satellite Processing Division Support contract (the "ESPDS Contract") issued by Defendant National Oceanic and Atmospheric Administration's ("NOAA") National Environmental Satellite, Data and Information Service, Order no. GST0110BK0017, Contract no. CM130105CT0047, Duffy Aff. ¶ 4, Am. Compl. Ex. A, ECF No. 15-3, which will be completed on August 15, 2014, *Id.* ¶ 24.

In response to NOAA solicitations for bids on Option Year Two of the ESPDS Contract, SSAI submitted "highly sensitive proprietary business information," including trade secrets and "Source Selection Information" as defined in the Federal Acquisition Regulations ("FAR"), 48 C.F.R. § 2.101.  Am. Compl. ¶ 12; *see also* Duffy Aff. ¶ 6.  These documents were marked as confidential and restricted, and were password-protected when submitted.  Duffy Aff. ¶ 7.

At an unspecified later time, NOAA also issued a new solicitation for a Satellite Mission Operations and Maintenance Support Contract (the "SMOMS Contract"), Solicitation no. ST-133E-13-RP-0196, which "entails a continuation of the service SSAI has provided under the ESPDS contract."  Am Compl. ¶ 14; Duffy Aff. ¶ 8.  Lacking the wherewithal to bid as a prime contractor for the SMOMS contract, SSAI joined the bid of Systems Integrated Development, Inc. ("SID") as a subcontractor to its bid, and submitted material that included "highly sensitive business proprietary information, trade secrets, and "Source Selection Information," Am. Compl. ¶ 15; Duffy Aff. ¶ 10, contained in locked, password-protected files, Am. Compl. ¶ 16; Duffy

---

[1] It does not appear from the filings that Defendant United States of America has been served in this action or given notice of it, and SSAI seeks to proceed *ex parte*.  Accordingly, the facts used herein are taken solely from SSAI's filings, and though I will rely on those facts for the purpose of considering and resolving the pending motion, nothing herein is intended to indicate the adoption of any facts before the Government has had the opportunity to contest it.

Aff ¶ 11.  The SMOMS contract was not awarded to SID, and instead was awarded to Defendant 2020 Company, LLC.  Am. Compl. ¶ 20; Duffy Aff. ¶ 12.  "The loss of the SMOMS contract alone causes Plaintiff lost profits damages in the amount of $1,800,000.00 – $2,000,00.00."[2] Am. Compl. ¶ 29.

On May 7, 2014, Keith Duffy, an SSAI Program Manager sought to access documents related to the ESPDS contract in a shared hard drive managed by United States personnel (the "Drive"), Duffy Aff. ¶ 13, and saw that the Drive appeared to contain confidential files related to the SMOMS solicitation, *id.* ¶ 15.  Upon recognizing certain of the files as belonging to SSAI, the Program Manager opened them and found that they contained confidential, highly sensitive information and no longer were password protected, so that they could be viewed by others, including SSAI's competitors. *Id.* ¶¶ 16–20.

In a letter dated May 16, 2014, SSAI provided notice to "Mr. Mitchell Ross, Director of NOAA's Acquisition and Grants Office," advising him that confidential information was disclosed improperly by NOAA; the letter was copied to "Mr. Anthony Pellegrino, Contracting Officer of General Services Administration, and to the United States Department of Commerce Office of Inspector General."  Am. Compl. ¶ 31.  Although SSAI was advised that an investigation by the Department of Commerce Office of the Inspector General (the "OIG Investigation") was underway, "SSAI has seen no government action addressing its concerns," *id.* ¶ 32, which I take to mean that SSAI's confidential data remains unprotected.

After failing to win the SMOMS Contract, SID "filed a post-award bid protest with the Government Accountability Office (GAO) on May 22, 2014, in part on the basis that source

---

[2] Although it appears that SSAI meant to allege damages up to two million dollars and simply omitted a zero, I will not correct the error here because the amount of damages sought has legal significance.

selection information of its proposed subcontractor SSAI was wrongfully disclosed and unprotected, . . . and the award was thereby tainted." *Id.* ¶ 33. The protest "was dismissed due to a technical filing error," and it is not clear from the present record whether SID intends to pursue further action in the Court of Federal Claims. *Id.* ¶ 34.

On July 9, 2014, SSAI filed a Complaint and Motion for Emergency Injunctive Relief ("Compl."), ECF No. 1, in this Court against Defendants United States of America, NOAA, and 2020 Company, LLC, alleging violations of the Procurement Integrity Act ("PIA"), 41 U.S.C. § 2102, and the Federal Information Security Management Act ("FISMA"), 44 U.S.C. § 3541, and alleging a claim for publication of trade secrets under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346. Plaintiff also sought immediate injunctive relief suspending the demobilization of the ESPDS contract and the mobilization of the SMOMS contract pending completion of the OIG Investigation. *Id.* 12. The next day, SSAI also filed a one-and-a-half-page, *ex parte* Motion for a Protective Order, ECF No. 5, seeking an order at the outset of this case restricting public access to information contained in case filings.[3]

On July 11, 2014, I denied the Motion for Emergency Injunctive Relief, which I construed as a motion for a temporary restraining order, in a Letter Order noting serious concerns as to whether this Court can exercise subject matter jurisdiction over SSAI's claims. Letter Order, ECF No. 6. In that Letter Order, I noted that waivers of the sovereign immunity of the United States must be construed narrowly, and that neither the PIA nor the FISMA appeared to give rise to a private right of action against the United States. *Id.* 1–2. Because these laws did not allow for a private suit against the Government, I also noted serious doubts that the FTCA could be a valid basis for relief for the same harm. *Id.* Accordingly, in addition to denying the

---

[3] The Motion for Protective Order initially was filed as an attachment to the Complaint, but was rejected by the Clerk as improperly filed and re-filed as a free-standing motion on July 10, 2014.

motion for a TRO, I ordered SSAI to show cause as to why its Complaint should not be dismissed for lack of subject matter jurisdiction. That same day, I summarily denied the Motion for Protective Order, without prejudice, for failure to satisfy the requirements of *Doe v. Public Citizen*, 749 F.3d 246 (4th Cir. 2014). Paperless Order, ECF No. 9.

SSAI has filed a Motion to Reconsider Plaintiff's Protective Order ("Mot. to Reconsider Prot. Order"), ECF No. 10, and a Motion for Reconsideration of Motion for Temporary Restraining Order and Preliminary Injunction ("Mot. to Reconsider TRO"), ECF No. 12, and supporting Memorandum ("TRO Mem."), ECF No. 12. SSAI also has filed Plaintiff's Response to Order to Show Cause ("Pl.'s OSC Resp."), ECF No. 13, and amended its complaint on July 21, 2014, Am. Compl., ECF No. 15.

In SSAI's Amended Complaint, it adds a new basis for jurisdiction: the Administrative Procedure Act (the "APA"), 5 U.S.C. §§ 701–706. *Id.* For the first time, SSAI also expressly spells out the claims it seeks to assert against the Government: (I) "Tortious Disclosure of Proprietary Information, Trade Secrets, and Source Selection Data," arising under the FTCA and the APA, *id.* at 9; (II) "Violation of Plaintiff's Procedural Due Process Rights Under the APA and the U.S. Constitution," *id.* at 10; (III) and "Equitable Estoppel," *id.* at 11. And in addition to seeking an injunction preventing the demobilization of the ESPDS contract and the mobilization of the SMOMS contract, SSAI now seeks to enjoin the United States "from continuing to make its proprietary information available to unauthorized persons," and seeks money damages in the amount of "$1,800,000.00 – $2,000,00.00." *Id.* at 13.

It does not appear from the record before me that any Defendant has been served yet, and SSAI's attorney has failed to make the certification required by Fed. R. Civ. P. 65(b)(1)(B) when

a party seeks a TRO. Having reviewed the filings, I find a hearing is not required. Loc. R.
105.6.

## II.        STANDARD OF REVIEW

The purpose of a preliminary injunction or a temporary restraining order ("TRO") is to
"protect the status quo and to prevent irreparable harm during the pendency of a lawsuit,
ultimately to preserve the court's ability to render a meaningful judgment on the merits." *In re
Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003). A preliminary injunction is
distinguished from a TRO only by the difference in notice to the nonmoving party and by the
duration of the injunction. *U.S. Dep't of Labor v. Wolf Run Mining Co.*, 452 F.3d 275, 281 n.1
(4th Cir. 2006) (comparing Fed. R. Civ. P. 65(a) with Fed. R. Civ. P. 65(b)). Notice is not
required for a TRO, but the moving party's attorney, or the movant himself, in the case of a *pro
se* party, must "certif[y] in writing any efforts made to give notice and the reasons why it should
not be required." Fed. R. Civ. P. 65(b)(1)(B). Moreover, the moving party must "clearly show"
by "specific facts in an affidavit or verified complaint" that "immediate and irreparable injury,
loss or damage will result to the movant before the adverse party can be heard in opposition."
Fed. R. Civ. P. 65(b)(1)(A). The substantive standards for a TRO and a preliminary injunction
are identical; therefore a district court can consider a motion for a TRO as a request for a
preliminary injunction, so long as the opposing party was given notice sufficient to allow for a
fair opportunity to oppose it. *Id.* at 283 (citing *Ciena Corp. v. Jarrard*, 203 F.3d 312, 319 (4th
Cir. 2000)).

To obtain a preliminary injunction or a TRO, the plaintiff must "establish that [1] he is
likely to succeed on the merits, [2] he is likely to suffer irreparable harm in the absence of
preliminary relief, [3] the balance of equities tips in his favor, and [4] an injunction is in the

public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011). As a preliminary injunction is "an extraordinary remedy . . . [it] may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

Prior to 2009, the Fourth Circuit followed a "balance of hardship" approach to preliminary injunctions considering all four *Winter* factors, but "allow[ing] each requirement to be conditionally redefined" in a "flexible interplay" depending on how the other requirements were met. *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 347 (4th Cir. 2009) (citing *Blackwelder Furniture Co. of Statesville v. Seilig Manufacturing Co.,* 550 F.2d 189, 196 (4th Cir. 1977)), *vacated on other grounds*, 559 U.S. 1089 (2010), *reissued in part*, 607 F.3d 355 (4th Cir. 2010). However, *Real Truth* invalidated this approach, and it "may no longer be applied" in the Fourth Circuit. *Id.*[4] As a result, the Plaintiff must satisfy each requirement as articulated. *Id.*

## III.   DISCUSSION

### A.  Requirements of Fed. R. Civ. P. 65

Fed. R. Civ. P. 65(b) provides:

(1) ***Issuing Without Notice.*** The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
    (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
    (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be  required.

---

[4] Insofar as SSAI relies on the TRO standard as articulated in twenty-year-old case law, *see* TRO Mem. 3 n.1 (citing *Direx Isr., Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991)), it is not clear that SSAI is arguing the proper legal standard in its motion.

Neither the original nor the amended complaint is verified, Compl.; Am. Compl., and SSAI has not included an affidavit setting forth the relevant facts with its original TRO motion incorporated in its Complaint, nor with its Motion to Reconsider TRO.  However, as an exhibit to its Amended Complaint, SSAI has attached an Affidavit of Keith Duffy, Am. Compl. Ex. A, ECF No. 15-3, which appears to contain relevant factual allegations.  Although it is not clear that the Duffy Affidavit contains the full universe of facts on which SSAI wishes to rest its Motion to Reconsider TRO, it at least satisfies the requirement that facts be set forth in an affidavit under Fed. R. Civ. P. 65(b)(1)(A).

On the other hand, SSAI's counsel has not certified that any efforts were made to provide notice to Defendants, nor has he set forth reasons why such notice should not be given as Fed. R. Civ. P. 65(b)(1)(B) requires.  This is no mere formal requirement, particularly in a case such as this where, for reasons discussed *infra*, it appears that SSAI's briefing is imprecise and incomplete, notice to an adversary provides the opportunity for the Court to be accurately informed of all of the facts and law relevant to a request for preliminary relief.  If, as alleged, the United States has been improperly publishing SSAI's confidential information, it is difficult to understand why SSAI would not have provided notice to the Government, giving it the opportunity to remedy the situation without the need for a TRO or injunction.  Accordingly, SSAI has failed to meet the requirements of Rule 65, and the Motion to Reconsider TRO must be DENIED without prejudice.

Having failed to give reasons why notice of the TRO motion should not be given to the government, I am ordering SSAI to give notice if it still wishes to seek a preliminary relief, within ten days of this Memorandum Opinion.  Though the notice requirement does not necessitate formal service of process, as part of the notice it provides, SSAI will furnish to

Defendants copies of all its filings to date as well as orders (including this Memorandum Opinion) entered by the Court to date.

With regard to the merits of SSAI's motion, several aspects of its claims may be resolved without further briefing. Accordingly, to reduce the burden on the parties and the Court, I will resolve those issues here. Inasmuch as this Memorandum Opinion and the accompanying Order address, in a fashion adverse to SSAI, the "immediate and irreparable injury" that appears to undergird SSAI's bid for a TRO as opposed to a preliminary injunction, it is questionable whether any basis now exists for further *ex parte* TRO proceedings, rather than proceeding to consider the appropriateness of a preliminary injunction, which may proceed at a more deliberative pace and allow for all parties to be heard. *See* Fed. R. Civ. P. 65(b).

### B. Subject Matter Jurisdiction

In my Letter Order of July 11, 2014, I expressed doubt that this Court had subject matter jurisdiction over Plaintiff's claims arising under the PIA, FISMA, and FTCA, and I ordered SSAI to show cause why those claims should not be dismissed. Plaintiff has responded to that Order, Pl.'s OSC Response, and also has added new bases for seeking relief: the APA and the Fifth Amendment's Due Process Clause,[5] *see* Am. Compl.

In its OSC Response, SSAI has not argued that this Court can entertain a private action brought under the PIA or FISMA, *see* Pl.'s OSC Resp. Accordingly, Plaintiff has conceded that subject matter jurisdiction does not lie under those statutes, *see Burns & Russel Co. of Balt. v. Oldcastle, Inc.*, 166 F. Supp. 2d 432, 440 (D. Md. 2001), and to the extent that SSAI has sought to assert claims arising under those statutes, such claims must be DISMISSED.

---

[5] SSAI purports to bring its claim under both the Fifth and Fourteenth Amendments. Am. Compl. ¶ 52. However, because the Fourteenth Amendment applies only to action by states, it readily is apparent that SSAI only can assert a Due Process claim against the Federal government under the Fifth Amendment's Due Process Clause.

Rather, SSAI has sought to show that it may bring a claim for money damages for breaches of Maryland law respecting the treatment of trade secrets, *id.* at 3–5, and now has marshalled case law to support its position, *see id.* (citing *Jerome Stevens Pharma, Inc. v. FDA*, 402 F.3d 1294, 1256 (D.C. Cir. 2005); *Kramer v. U.S. Dep't of the Army*, 653 F.2d 726 (2d Cir. 1980)).  These cases suggest (though I do not here hold) that SSAI's claims may be cognizable under the FTCA.

But SSAI has missed a crucial analytical step that is fatal to its FTCA claims: the requirement that a tort claim be presented to the relevant agency and denied *before* a civil action may be commenced under the FTCA.  *See Henderson v. United States*, 785 F.2d 121, 123 (4th Cir. 1986).  The FTCA clearly provides that "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the a date of mailing . . . of notice of final denial of the claim."  28 U.S.C. § 2401(b).  These requirements are "jurisdictional and nonwaivable."  *See Gould v. U.S. Dep't of Health and Human Servs.*, 905 F.2d 738, 741 (4th Cir. 1990).  SSAI provided notice to the United States on May 16, 2014, Am. Compl. ¶ 31, but filed its original Complaint less than two months after giving notice, and *before* it has received a response, Am. Compl. ¶ 32.  This is insufficient to deem the lack of a response to be a denial.  *See* 28 U.S.C. § 2675(a) ("The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for the purposes of this section.").  Even in the cases cited by SSAI, plaintiffs were required to comply with the requirements of the FTCA.  *See, e.g.*, *Jerome Stevens Pharma., Inc. v. Food and Drug Admin.*, 319 F. Supp. 2d 45, 48 n.5 (D.D.C. 2004), *rev'd*, 402 F.3d 1294 ("Prior to filing suit, Jerome exhausted its FTCA claims by presenting its

claims to FDA and failing to receive a final agency disposition within six months."). Accordingly, SSAI's FTCA claim must be DISMISSED for lack of subject matter jurisdiction, along with SSAI's claim for monetary relief, since the APA does not authorize an award of money damages.  *See* 5 U.S.C. § 702 (authorizing "relief other than money damages").[6]

## C. Availability of Injunctive Relief

With respect to its remaining APA claim, SSAI seeks a preliminary injunction that will (1) require the government to stop publishing SSAI's confidential information; (2) bar the United States and NOAA from demobilizing SSAI's existing, ESPDS Contract; and (3) bar the United States and NOAA from moving forward with the SMOMS Contract that was awarded to 2020 Company, LLC.  Pl.'s Mot. to Reconsider TRO 1–2.  In essence, this boils down to two forms of relief: (i) an injunction requiring the United States to cease publication of information that, as alleged by Plaintiff, it cannot legally publish; and (ii) an injunction halting NOAA's procurement process on the contracts involving SSAI and, in essence, holding those contracts in limbo until the OIG Investigation sought by SSAI is concluded.  SSAI has raised at least the possibility that it may be entitled to the first of these injunctions, granting relief with respect to the release of its confidential information under the APA.  *See Megapulse, Inc. v. Lewis*, 672 F.2d 959, 971 (D.C. Cir. 1982) (finding plaintiff entitled to preliminary injunction for publication of trade secrets

---

[6] I will not address SSAI's Due Process claim here except to notice that it is extremely difficult to discern the nature of the claim that SSAI seeks to bring under the Due Process Clause. Paragraph 50 of its Amended Complaint actually seems to sound in a Takings Clause claim for just compensation for the taking of its confidential information, Paragraph 51 appears to argue that the standing requirements and narrow waiver of sovereign immunity contained in the Tucker Act violate Due Process, and Paragraph 52 raises an unparticularized argument that the Government, presumably either by publishing confidential information or by refusing to award the SMOMS Contract to SID, has "violated Plaintiff's procedural and substantive due process rights."  Though the validity of all of these claims is questionable, none seems to allege grounds for injunctive relief.  Accordingly, I need not address them to resolve the instant motion

under APA as agency action contrary to law).  But because SSAI has not complied with Rule 65, I need not resolve that issue conclusively here.

On the other hand, it is apparent that SSAI cannot be entitled to an injunction preventing demobilization of the ESPDS Contract or mobilization of the SMOMS Contract.  To prevail on a preliminary injunction, SSAI must "make a clear showing that it will likely succeed on the merits at trial." *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 347 (4th Cir. 2009) (citing *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 19 (2008).  SSAI cannot even show that it may bring claims related to the award of a contract in this Court, much less prevail on them.

Although SSAI seeks to characterize its claim in a variety of imaginative ways, it essentially is seeking review of a contract award under the Tucker Act, 28 U.S.C. § 1491(b)(1). Though once the district courts were permitted to entertain such an action, the provision granting jurisdiction expired on January 1, 2001. *See Sealift, Inc. v. Reilly*, 496 F. Supp. 2d 52, 52 (D.D.C. 2007) (citing Pub. L. No. 104-320, § 12(d)).  Accordingly, this Court no longer can entertain such a claim, much less enter an injunction with respect to a bid protest.

Moreover, even in the absence of § 1491's sunset provision, such an action only may be brought "by an interested party." 28 U.S.C. § 1491(b).  An interested party must be "an actual or prospective bidder," 4 C.F.R. § 21.0, and it long has been the case that a subcontractor to another's bid—even a major subcontractor—simply does not meet this definition. *MCI Telecomm. Corp. v. United States*, 878 F.2d 362, 364 (Fed. Cir. 1989).  Accordingly, even if an action to prevent the demobilization of the ESPDS contract and the mobilization of the SMOMS contract could be brought in a district court, SSAI would lack standing to bring it.

Finally, even if I could entertain such a suit, it is doubtful that an injunction delaying any action on two government contracts would serve the public interest. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312–13 (1982) ("courts . . . should pay particular regard for the public consequences in employing the extraordinary remedy of injunction").   When a TRO or preliminary injunction will affect the ability of an agency to perform its public duties, the potential harm to this public interest "must be considered, though it may not be determinative." *Cerro Metal Products v. Marshall*, 620 F.2d 964, 972 (3rd Cir. 1980).  Were I to grant the relief that SSAI requests, it would create considerable disarray in the ESPDS Contract and the SMOMS Contract.  It is hard to discern how this is in the public interest, even if SSAI is correct that certain of its confidential commercial information improperly was published.  And, even if the public interest may be furthered in general by protecting confidential business information, that interest does not override the public interest in the effective management of government contracts.

Simply put, SSAI has failed to articulate a sufficient basis for enjoining the demobilization of the ESPDS Contract or the mobilization of the SMOMS Contract, and to the extent that it seeks an injunction that does so, its motion must be DENIED, and any claims seeking to challenge the award of a contract must be DISMISSED for lack of subject matter jurisdiction.

### D.  Motion for Protective Order

SSAI also has filed a Motion to Reconsider Protective Order, asking me to reconsider my denial of its original protective order motion because SSAI failed to comply with the requirements of *Doe v. Public Citizen*, 749 F.3d 246 (4th Cir. 2014).  Simply put, for the reasons stated in *Doe*, filings in federal courts are public matters, and a court may not seal entire

proceedings or parts thereof without specific factual findings that support the legal principles in *Doe*. *See id.* at 266 ("When presented with a sealing request, our right-of-access jurisprudence requires that a district court first 'determine the source of the right of access with respect to each document, because only then can it accurately weigh the competing interests at stake.'").  SSAI's failure to comply with *Doe* in seeking the presumptive sealing of documents not yet filed, precludes the order that it seeks.  And in any event, SSAI also has failed to comply with Fed. R. Civ. P. 5.2 or Loc. R. 105.11 governing when and how documents may be sealed.  Accordingly, the motion for a protective order is DENIED, without prejudice to SSAI seeking to protect confidential information contained in specific filings as appropriate.

## IV.    CONCLUSION

For the stated reasons, Plaintiff SSAI's Motion for Reconsideration of Motion for Temporary Restraining Order and Preliminary Injunction shall be DENIED and SSAI's Motion to Reconsider Protective Order also shall be DENIED.  Further, SSAI's claims arising under the Procurement Integrity Act, the Federal Information Security Management Act, the Federal Tort Claims Act, and the Tucker Act will be DISMISSED for lack of subject matter jurisdiction.

A separate order shall issue.


Dated: July 22, 2014                                  _____/S/_____
                                                      Paul W. Grimm
                                                      United States District Judge

dsy